and we're going to call the next case Catalano v. Allstate and it's 24-1126. Good morning, Your Honor. May it please the Court, I'd like to reserve three minutes for rebuttal. The way that we see this is that this is a contractual interpretation issue and that there are three primary provisions which need to be interpreted. Two of those are exclusionary and one is a condition of coverage. The condition of coverage is that it is sudden. The sudden has been briefed in depth, I believe, in the written argument. The exclusion is, I'll refer to it as an aging exclusion. However, just in full disclosure to the Court, there are other exclusions within that, but I believe aging summarizes it up. And then on top of that, there is the earth movement exclusion that is concentrated more on in the briefing. I'd like to start by discussing aging and move on in order of increasing complexity. I believe aging is the most simple. There's a difference of opinion between the experts in regard to the cause. I believe that aging is just a question of fact that should be left up to a jury. It wasn't really concentrated on in the motion for summary judgment order and it was not as intensively briefed as the other two issues, so I anticipate that the majority of the reasoning will be on the other two issues. Sudden was the reasoning which primarily caused the dismissal, excuse me, the summary adjudication. We disagree that it was a sudden loss. Excuse me, we do believe that it was a sudden loss, primarily because the judge focused only on the temporal aspect of the word sudden, whereas we believe the word sudden also contains a connotation of surprise, something to do with whether or not an event was expected. And to give a demonstrative of that, if you think about the last five times you used the word sudden in your daily life, it might have been you saw a spider on your ceiling when you were going to sleep. That would be sudden. That is both instantaneous and surprising. However, in the news recently we saw the fall of the Assad regime in Syria. That was sudden, to me at least. However, that took place over the course of a week or so. Isn't there a temporal, an external temporal limit, though, on sudden? I believe in practice, yes. But as a heuristic, I'll agree with you. But, I mean, I could probably come up with an example. You know, if we move to a geological scale, then I'm sure that the relative bounds of what could be considered sudden would exceed human history. Right? And I don't necessarily think that's relevant to this decision. So I agree with you as a heuristic. But I do think that limiting this to a temporal discussion is not fully giving the word sudden its true meaning. And they could have used a different word. They could have used instantaneous. They could have used. Well, counsel, let me just stop you there. I have never heard of a contract using that word. They all use sudden. Yes, Your Honor. It would be tough to sell an insurance policy, I believe, if it was limited to instantaneous losses. Yeah, exactly. Just help me. Tell me what the district court did wrong. The district court basically said you knew about this for months and months and months and months. And something was going to happen. And it did. Yes, Your Honor. I mean, that's basically what the district court said. Tell me in what in your view that is why that is incorrect. Well, I think the distinction is what was known about for months and months and months was the feeling of vibrations. I saw the news recently that a new Roman bathhouse was discovered in the ruins of Pompeii. There were skeletons found in the in one of the rooms. I imagine that no matter how much sulfur they smelled in the weeks leading up to the eruption, the eruption itself was a sudden event. Well, here, that analogy is not correct. I mean, there was something at the end, the eruption. Right here, the ground vibrations, that was constant, wasn't it? Well, we don't know if it was constant, Your Honor. Okay. What we do know from the record is that there were vibrations. My understanding of construction methodology is that, and this is, I mean, to me it is common sense, that, you know, you don't receive just one level, constant level of vibration over a period of time. Different events take place over the course of a construction project, which would lead to varying levels of vibration. For all we know. What does the record say? That sounds extra record to me. Yes, Your Honor. What does the record say about what was happening? That there were vibrations. It doesn't discuss how often there were or how long they were? That's correct, Your Honor. There's nothing that says that it was, there were vibrations for months? There were vibrations felt for months. I apologize if I misunderstood your question. Indisputably, I believe the vibrations started in August, the year before the loss, so it was four or five months before the date of the loss itself. Excuse me. But I also want to spend some time talking about the earth movement exclusion, because that's where I think. Yes, Your Honor. Can you tell me why invited error does not apply here? Well, I'm sorry, I didn't understand your question. Oh, I'm asking about invited error. Did you submit your understanding of sudden that the district court adopted? I'm drawing a blank on the reasoning there. I do remember in the HECLA, the Colorado Supreme Court did determine that the word sudden can be interpreted as unexpected and unpredictable, I believe. But I do not have a better answer to your question. Okay, thank you. In your opinion, counsel, does it make any difference that the vibrations were caused by a third party, not under the control of the insurer? I do, under the context of the earth movement exclusion, not necessarily the sudden. Not the earth movement, I'm talking about the vibrations. Well, to the point that the tenant, Mr. Stalker, did not anticipate the damage to the floor because he was not the individual causing the vibrations, that makes it more likely in my mind that a jury could find that it was sudden. However, I don't think that is the most likely reason why a jury would find it was sudden. Well, assuming that he was concerned, could he have stopped the vibrations by canceling the project or was it a city project? It was a city project. This was repairs to a sidewalk, so this was not under the direct control of Mr. Stalker nor Mr. Catalano. Thank you. So moving to the earth movement exclusion, opposing counsel in their brief brings up that the earth movement exclusion is able to be interpreted by looking at the plain language. However, the plain language would be incredibly expansive if taken to a relatively generous means. If you look at anything that consists of earth movement and throw out all claims that merely consist of that, I mean, where would that stop? You could make the argument that the earth is currently spinning. The earth is rotating, revolving around the sun. I do not believe that to be the type of earth movement contemplated in the policy, but that would be a rational interpretation of that language. Moreover, I do not think that the earth movement contemplated by the policy is the earth movement present in the vibrations, because all of the 18 examples given in the policy were natural earth movement, whereas this was artificially induced earth movement. Subsidence can be man-made. I'm sorry? Subsidence in mining. You can do underground mining and it can cause subsidence. That is correct, Your Honor. I agree with that statement. However, I don't think it's exclusively artificial. Fair enough. Let me keep jousting with you about the word sudden, and I'll give you a personal example. Yes, Your Honor. I live in the desert, and we had seven and a half inches of rain in five hours. And the place where I live, I've lived there for over 20 years. And after this rain, I went out and I saw holes in the ground that I presume were just caused by the saturation, that there was always something there, that over the years something had been building up. But finally, with that much moisture in the ground, it caused a hole to develop, just like... And that's not going to make for a very good record. I was using my hands and a little noise, but... You know, that's something that presumably was going on for a long time, but manifested itself all of a sudden, right? Sort of like your case. This vibration was going on for a long time. Yes, Your Honor. And then, next thing you know, you're floor buckled. Is that for you, or does that kind of example suggest that what happened to you was sudden or not sudden? Well, I believe that depends on where you grew up. I think if you grew up in the Midwest, where potholes are extremely common due to the weather patterns there and how the construction is laid down, then that would not be sudden to you. You would be expecting that. However, if you grew up in Beverly Hills, where I understand that the sidewalks are very well maintained, then if you see that after one rain, that would probably be sudden to you. Okay. Yes, I'd like to reserve the remainder of my time for rebuttal. Thank you. Good morning. If it may please the Court, my name is Justin Zowski, and I represent Allstate in this matter. Now, there was some discussion as far as factual disputes, as far as the cause of the damage. But even giving plaintiff the benefit of the doubt, the nonmoving party, I think summary judgment was still appropriate in this matter. First, which I'll touch on, we had whether or not this was a sudden occurrence or direct sudden occurrence to the property. And then even if we were to take the plaintiff's opinion, their expert was of the opinion that the vibrations over time is what caused damage, and then that is excluded under the policy. Allstate's expert took the opinion that this is a house that was built in 1890, had some structural issues as far as some of the framing in the foundation, and the wear and tear of the brick. Now, there was some discussion or reference to the case of Heckler. Counselor, excuse me. Yes. If that was the case, why did they write the policy? Are you suggesting that every old house, if anything happens, it's just tough and there's no coverage? No, that's not what I'm suggesting, Your Honor. Policies are meant to cover sudden, unexpected occurrences. As with all things, property does age over time. So when the kitchen floor drops out, that's just the way it is? It's an old house. Not necessarily. It would depend on the cause of it. For instance, if a vehicle were to cream off the road and hit the house causing the floor to drop down, that would be a sudden occurrence or, say, a wind hails the floor. Why would Allstate say that? The house was really old, and so the car that hit it, that was just incidental, and everybody should know that the house is just old. And so we don't cover old houses. In a situation like that, I think you would have to look at the damage that occurred immediately after or suddenly after the incident of the car hitting the house versus a situation where you start to see the floor drop down over time, which I would think would be more attributed to wear and tear instead of a sudden incident. Did the record in this case show that the floor was subsiding a little bit each day or each year or that you walked into it and it was not there? No. What the record shows is Mr. Catalano's tenant had testified that the work began in August of 2020 and that almost every day when he would wake up or he would be woken up in the mornings of vibration from the work being done. I believe it was the sewer line they were installing. He first noticed the damage of the floor in January of 2021, January 18th, I believe. Now, in the context of the dwelling. Let me stop you there. I'm sorry. So you're saying that the floor buckling happened over a significant period of time, not the vibration. I thought the district court judge just based it on vibration, but you're saying actually the buckling of the floor was viewable over time, a significant amount of time. And I understand that distinction. It was first reported or noticed by the tenant in January, but plaintiff's expert that they had hired was of the opinion that the buckling of the floor over time caused the underneath joist beams to walk out of their pockets, which then resulted in the floor itself starting to sag. Okay. I'm just back with sudden. So I thought the district court judge said, this vibration has been going on for a very long time. Therefore, it can't be sudden. And you're telling me that there was something that the tenant was observing over a significant amount of time, not the vibration, but the actual damage. That's what I'm trying to figure out. Is that true? He had felt the vibration over time, which their expert was of the opinion was causing damage all along to the point that eventually he was able to notice the floor sagging. So though the damage or the cause of the destruction occurred over time, the notice or the realization of the damage itself may have been sudden, but not the cause. Okay. I don't want to use the wrong term from the policy, but was there evidence in the record that over time this house, and I'm thinking about the earth movement exclusion, it sounds like from what you just said, the expert was saying, hey, this thing was vibrating. He was saying it was causing the floor joists to move. That it wasn't necessarily a function of the earth moving, of settling, or, you know, earth slipping out from under the foundation, but of vibrations causing the structure of the house to move itself. That is what the expert was of the opinion. I mean, was that the, I mean, did you agree with that? I mean, did you dispute that as being what was happening? It was all state's experts' opinion that it was a brick and mortar foundation underneath with framing with the wood, and that over time being the age of the house, that the brick had begun to deteriorate. They noticed some missing pieces as far as the grout is concerned and the brick structure itself. Okay, so nobody was of the opinion that there was settling or subsidence, that it was actual, that the vibration over time was causing, it was basically causing degradation of the construction of the home. Essentially, it was the vibrations over time. Yeah. And also, as noted in the briefing, the High Street Lofts Condominium Association versus American Family. Let me stop you for a minute before you, I have a, if I don't ask you this right now, I will forget. So are we at a point now where you would say, listen, we're not saying that the movement of the earth exclusion is what matters here? I would say it does still apply because that court, the district court case, reached a decision that the vibration transmitted through the ground does constitute earth movement. Okay. However slight it may be or how extreme it may be based on the type of work being done. All right. There was some mention as far as the Colorado Supreme Court defining sudden is unintended or unexpected in the Heckler mining case. That's distinguishable from this situation. That was a liability coverage in regard to mining pollution that was done by the insured. And the issue before the court was whether or not there'd be a defense out or indemnification out under the policy. And one of the reasons the court found that is the, the exclusion in there there was a pollution exclusion that said that it would not cover the release of pollution unless it was sudden and  At the same time under the liability section, it covered an occurrence which results in damages. The policy then went on to define an occurrence as an accident or the continuous or repeated exposure to conditions, which would result in damage. So the court looking at the two definitions, which obviously were ambiguous when read together, came up with the definition as far as sudden being unattended or unexpected. Are you familiar with the gold King mine incident that occurred down in Southern Colorado where the, where the EPA was cleaning up an old mine and breach some damn very contaminated dammed up water and caused pollution of, of, I think it was the animus river. Yes. Okay. Does that seem like something analogous to you? I mean, the, the, the polluted water was building up in this little reservoir for lack of a better term for a while, but the release of it was sudden. Does that sound like the Colorado case you're talking about? That is one of the reasons that they explained in heckler when looking at it in a policy when it wasn't defined as pointed out by the district court judge in our case in mock versus all state, which is another Colorado district court case. That was a property damage claim for a stucco. And the court found that when there isn't any ambiguity in a policy, as far as sudden direct loss, sudden means a loss brought about in short time, not something that occurred over time. One of the concerns with reading into the sudden definition, the way that plaintiff is asking us to do is it would create complications as far as other coverage is concerned. I think the argument could then be made that if a house is subjected to rain over years, or even sunshine that that repeated exposure could eventually result in a loss when all of a sudden there's rotting discovered or other issues with the property because of that exposure. And that's not something that the property coverage is intended to ensure before you move from sudden. I still, I guess, do you think sudden means unexpected or no, I've, I heard you say the word unexpected, but how do you define sudden? Sudden, I believe is more temporal, something happening quickly following an act. So I know you say it's more temporal, but is it exclusively temporal? Or is it temporal? What role does unexpected play in your definition? I think sudden could also be unexpected if something happens quickly, such as why wouldn't that apply here? Because this is something that took place over time. It wasn't something, there wasn't, there's this lack of this temporal relation. So the definition of sudden includes unexpected, but this was not unexpected. It may have been expected. I'm not sure what their expectations were at the time having a property with that age being exposed to vibrations. But I don't believe that was fleshed out in the record. Well, okay. But isn't, I'm sorry. Isn't that part of the definition that you've just given me is unexpected. Why wouldn't that apply? You just say, we don't know. I think sudden could be expected as well. I think when you're looking at something happens suddenly, it is something that happens quickly following some kind of acts, creating it. For instance, it could be extremely cloudy and, and being in the mountains going on a 14 or a hike on one of the 14ers, you may be aware that there is a danger for lightning and storms. And then suddenly in front of you, there's a lightning bolt that hits the ground though that may, you may have had an inclination or a thought that that could happen. That would be something that happens suddenly. So there was, there was no lightning in this case. No, there was not. Oh, okay. Yes. That's why I believe I said earlier, it was a sewer construction being done across the street. Sure. I believe so to install new sewer pipes. That's correct. The city had hired. I think there was a concrete company or another contractor that was doing the work for them. That is something somebody could be of the opinion. I know their expert, Mr. Catalano's expert, and his report had mentioned as far as vibrations in correlation with distance, the vibration itself sometimes can get, or becomes more minimal. I believe in the record, it shows that there's a,               that this was around 40 feet away from the house on some of the work that was being done. And so that led to their conclusion that the vibrations caused the joist shift or move out of the pockets, thus resulting in the floor falling. I'll say to engineer was that the opinion, it was age related that the brick itself, when they went underneath the sub floor, the brick had started to crumble and deteriorate with age, just given the length of time it had been there. That is correct. As far as there are different opinions, but even if we were to give Mr. Catalano, the benefit of the doubt is the non-moving party in summary judgment, the opinion of his experts still isn't covered under, under the earth movement exclusion and the fact that it doesn't constitute a sudden occurrence. No, the court primarily focused on whether or not the vibrations themselves constituted a sudden occurrence or sudden direct loss. There was some reference as far as the earth movement exclusion. And also to point out that the earth movement exclusion, the all state policy covers earth movement of any type. Then it does give some examples. I know a couple of them do discuss or reference causation, such as a volcano over an earthquake, but some of the other examples could be manmade as well. So there's no distinction as to whether or not it needs to be from nature or manmade. For instance, one of the exclusions is a sinkhole, which we know can be caused by improper foundation digging or even a water main break or some kind of error that way created by man. At the end of the day, summary judgment was appropriate in this case. And we ask that you affirm the district court's order. Thank you. May it please the court. This is not the type of earth movement that was contemplated in the policy, not only because it is artificial, but because these are sound waves traveling through the medium, which happens to be earth. And to give an example, if an explosion were to happen two miles away and you heard or felt the compression blast wave, would you call that air movement or would you call that the explosion? In this case, all of the examples of earth movement are things where the earth moves from point A to point B, not stays at point A and jiggles around for a moment and then passes a compression wave. That is not the type of earth movement that is contemplated in this policy. What about, what about earth movement that occurs when there's an earthquake, 200 miles away from you and you feel it at your house? I don't believe that would be covered as well. I think if you were at closer to the epicenter where the earth shifted, then that would absolutely be the type of earth movement that is covered. But if you're 200 miles away, I do not believe that would be covered. Excuse me. I don't believe that would be excluded under this policy.  And to give a further example, if you were to, you know, cup your hand to the earth, to the dirt and scream and see the, the dirt just move away. Right. Was that the type of earth movement that would be contemplated here? I don't believe it would be. That's, that's such a, a minor, I mean, it's just a vibration. Okay. So let me, let me make sure I understand what you're saying. So you're saying that if I live, if there's an earthquake in my town and it causes my house damage, no coverage. That's correct. You would agree. Yes, Your Honor. But the same earthquake that causes that I can feel at my house 200 miles away, it just doesn't happen to be as severe, but causes damage coverage. Yes, Your Honor. Okay. To give it a, an example on that specific question, can't remember which hurricane it was, but one of the more recent hurricanes in Houston, maybe they moved the highways, the hurricanes caused the earth to move because of the flooding and the mud, the mud sliding, things like that caused a whole lot of disruption to the city. That is the type of movement that this policy contemplates. However, if you were, you know, I don't think that the hurricanes caused earth movement, 200 miles away. I don't believe the vibrations traveled that far, but let's say you lived in new Orleans and you felt some of that movement from the, the shifting in Houston. I don't believe that that would be covered because the earth isn't moving. It's just vibrating a little bit. It's, it's not moving for me to be covered. I believe you say, I think you said, it would, it would be covered in new Orleans, but it would not be covered in Houston. Under that example. Well, you should, you should not. I apologize, your honor. All right. I yield the remainder of my time unless there are any further questions. No, thank you. Thank you, your honor. All right. Thank you. I think we're going to take a 10 minute break and we'll see you in a bit. Okay.